# IN THE COURT OF APPEALS OF IOWA

No. 18-0885
Filed March 6, 2019

**KHAMFEUNG THONGVANH,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.

_____

Appeal from the Iowa District Court for Webster County, Adria A.D. Kester, Judge.

Khamfeung Thongvanh appeals the denial of his application for post-conviction relief. **AFFIRMED.**

Jamie L. Hunter of Dickey & Campbell Law Firm, PLC, Des Moines, and Andrew J. Smith of Mack, Hansen, Gadd, Armstrong & Brown, Storm Lake, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Vogel, C.J., and Vaitheswaran and McDonald, JJ.

**McDONALD, Judge.**

This appeal arises out of the denial of Khamfeung Thongvanh's second application for postconviction relief. The questions presented in this appeal are (1) whether Thongvanh's second application for postconviction relief is time-barred and (2) whether *State v. Plain*, 898 N.W.2d 801, 829 (Iowa 2017)—in which the supreme court held the absolute-disparity test is not the exclusive test to "be used in deciding whether [a] jury pool was drawn from a fair cross-section of the community"—applies retroactively.

By way of background, in 1984, Thongvanh was convicted of first-degree murder. This court affirmed his conviction on direct appeal. *See State v. Thongvanh*, 398 N.W.2d 182, 189 (Iowa Ct. App. 1986). Thongvanh subsequently sought postconviction relief. In his application for postconviction relief, Thongvanh argued "systematic and intentional exclusion of Asians from the jury pool prevented the jury from being representative of the community and violated his Sixth Amendment right to an impartial jury." *Thongvanh v. State*, 494 N.W.2d 679, 683 (Iowa 1993). The district court denied the application for postconviction relief, and the supreme court affirmed. *See id.* at 684. In affirming the district court, the supreme court noted the case of *State v. Jones*, 490 N.W.2d 787, 793 (Iowa 1992) *overruled by State v. Plain*, 898 N.W.2d 801, 829 (Iowa 2017), held that a showing of absolute disparity was the exclusive method to show a jury pool was not drawn from a fair cross-section of the community. "Absolute disparity is calculated 'by taking the percentage of the distinct group in the population and subtracting from it the percentage of that group represented in the jury panel.'" *Plain*, 898 N.W.2d at 822 (quoting *Jones*, 490 N.W.2d at 793). The *Thongvanh* court concluded:

> There were no Asian jurors on applicant's jury. According to applicant's calculations, there was a .18 percent absolute disparity between Asians picked for jury duty and Asians in the general population of Webster County. Applicant argues that this disparity demonstrates Asians were significantly underrepresented in the jury selection process.
>
> In *State v. Jones*, 490 N.W.2d 787 (Iowa 1992), we held that an absolute disparity of 1.5 percent was insufficient to establish a prima facie violation of the Sixth Amendment. We conclude applicant has not made a prima facie case of underrepresentation in this case. Further, we do not believe applicant has established that the disparity that does exist is due to a systematic exclusion of Asians from jury duty.

*Thongvanh*, 494 N.W.2d at 683-84.

Subsequently, in 2017, the supreme court decided *Plain* and overruled *Jones*. *See Plain*, 898 N.W.2d at 826. The court reasoned that the absolute disparity formula was not always an accurate method of determining disparity. *Id.* at 823. The court held a defendant could show a jury pool was not drawn from a fair cross section of the community using formulae other than an absolute disparity formula. *See id.* at 826. The particular formulae endorsed by the supreme court are not of consequence in the resolution of this appeal, and we need not discuss them.

After *Plain*, Thongvanh filed a second application for postconviction relief. Thongvanh again argued the venire was not drawn from a fair cross section of the community and therefore violated his Sixth Amendment right. He argued *Plain* should apply retroactively to his case. The district court dismissed the application, concluding the application was untimely and *Plain* did not apply retroactively. Thongvanh timely filed this appeal.

This court reviews the denial of an application for postconviction relief for correction of errors at law. *See Perez v. State*, 816 N.W.2d 354, 356 (Iowa 2012).

We review constitutional claims de novo. *See State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013).

We first address whether Thongvanh's second application for postconviction relief is time-barred. Generally, applications for postconviction relief "must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued." Iowa Code § 822.3 (2018). Applications filed after three years are usually barred. *See, e.g.*, *Everett v. State*, No. 12-1032, 2014 WL 3749338, at *1-2 (Iowa Ct. App. July 30, 2014) (finding an application for postconviction relief was barred when brought five years after writ of procedendo was issued); *State v. Hoehn*, No. 11-2122, 2013 WL 1750984, at *1-2 (Iowa Ct. App. Apr. 24, 2013) (stating an application for postconviction relief would be barred because eleven years had passed since the defendant's conviction). However, an applicant may seek postconviction relief after the three-year period if the applicant relies on "a ground of fact or law that could not have been raised within the applicable time period." Iowa Code § 822.3. A ground of law could not have been raised if it "had been clearly and repeatedly rejected by controlling precedent." *Nguyen v. State*, 829 N.W.2d 183, 188 (Iowa 2013).

We conclude Thongvanh's application is not time-barred. Thongvanh's application was filed more than three years after procedendo issued in his direct appeal. However, during the relevant time period *Jones* was the controlling case. *See State v. Huffaker*, 493 N.W.2d 832, 833 (Iowa 1992); *State v. Harkey*, No. 10-0118, 2012 WL 299535, at *6 (Iowa Ct. App. Feb. 1, 2012); *State v. Jackson*, No. 09-0462, 2010 WL 624906, at *6 (Iowa Ct. App. Feb. 24, 2010); *State v. Fetters*,

562 N.W.2d 770, 777 (Iowa Ct. App. 1997). *Plain* overruled *Jones* and established a potential new ground of law not previously available to Thongvanh during the three-year period. Thongvanh filed his second application for postconviction relief within three years of *Plain*. His application is thus not time-barred. *See Frasier v. State*, No. 15-0533, 2016 WL 3269574, at *2 (Iowa Ct. App. June 15, 2016).

We next address whether *Plain* should be applied retroactively. Thongvanh contends this court should apply the test set forth in *Teague v. Lane,* 489 U.S. 288 (1989), to determine whether an Iowa Supreme Court case applies retroactively. We thus consider Thongvanh's claim under this framework. Under *Teague*, "new rules should not be applied retroactively to cases on collateral review unless the change: (1) places certain types of individual, private conduct beyond the ability of lawmakers to proscribe, or (2) creates a 'watershed' rule of criminal procedure implicating issues of fundamental trial fairness." *Brewer v. State*, 444 N.W.2d 77, 81 (Iowa 1989) (citing *Teague*, 489 U.S. at 311).

Thongvanh contends *Plain* created a watershed rule of criminal procedure implicating issues of fundamental trial fairness and should be applied retroactively. We disagree. The bar for finding a watershed rule is very high. *See Teague*, 489 U.S. at 314 (providing examples of watershed rules as those that prevented "proceeding[s] . . . dominated by mob violence," "prosecutor[s] knowingly ma[king] use of perjured testimony," and convictions secured through "confession[s] extorted from the defendant by brutal methods" (quoting *Rose v. Lundy*, 455 U.S. 509, 544 (1982) (Stevens, J., dissenting))). A watershed rule is one "without which the likelihood of an accurate conviction is seriously diminished." *Id.* at 313. "This class of rules is extremely narrow, and 'it is unlikely that any has yet to emerge.'"

*Schriro v. Summerlin*, 542 U.S. 348, 352 (2004) (altered for readability) (quoting *Tyler v. Cain*, 533 U.S. 656, 667, n.7 (2001)). The rule at issue in this case is not the type of watershed rule without which the accuracy of the conviction is seriously diminished. Indeed, the *Teague* court specifically held the absence of a fair cross section on the jury venire does not seriously diminish the accuracy of a conviction. *See Teague*, 489 U.S. at 315. This leads us to conclude the rule announced in *Plain* is not a "bedrock procedural element" that should be retroactively applied.

Our conclusion that *Plain* does not have retroactive effect is also supported by *Brewer v. State*, 444 N.W.2d 77 (Iowa 1989). That case involved the retroactivity of *Duren v. Missouri*, 439 U.S. 357 (1979). In *Brewer*, the jury venire excluded persons age sixty-five and older. 444 N.W.2d at 80. Brewer challenged this exclusion on direct appeal as a Sixth Amendment violation. *Id.* The court found no violation because the exclusion had a rational basis. *Id.* The Supreme Court later held in *Duren* that "[t]he right to a proper jury cannot be overcome on merely rational grounds. Rather, it requires that a significant state interest be manifestly and primarily advanced by those aspects of the jury-selection process, such as exemption criteria, that result in the disproportionate exclusion of a distinctive group." 439 U.S. at 367-68 (citation omitted). After *Duren*, Brewer again challenged his conviction, arguing *Duren* should apply retroactively. *See Brewer*, 444 N.W.2d at 80. Brewer's argument depended on a finding that *Duren* had created a watershed rule of criminal procedure. *Id.* at 81-82. The court held that the new rule regarding the composition of the jury venire did not require retroactive application. *See id.* at 82 (applying *Teague* and stating "we find no error in the trial

court's rejection of Brewer's claim that *Duren v. Missouri* announced new law that should be retrospectively applied to furnish Brewer a new trial").

Finally, Thongvanh argues the Iowa Constitution should be interpreted to "give broader retroactive application to new rules of criminal procedure than provided in *Teague*." In our view, *Brewer* forecloses any relief for Thongvanh. We are not at liberty to ignore supreme court precedent. To the extent Thongvanh seeks to revisit supreme court precedent, the argument is better directed to the supreme court. *See West v. State*, No. 15-0461, 2016 WL 3010518, at *1 n.1 (Iowa Ct. App. May 25, 2016) ("[The defendant] asks this court to reconsider this holding in light of other jurisdictions that require a court to conduct such a colloquy with the defendant. The supreme court [has] declined such an invitation . . . , and '[w]e are not at liberty to overrule controlling supreme court precedent.'" (quoting *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014)); *see also State v. Colton,* No. 15-1604, 2016 WL 3276939, at *3 (Iowa Ct. App. June 15, 2016) (refusing to expand constitutional rights when the supreme court had declined to expand those rights); *State v. Njenga*, No. 04-0573, 2005 WL 1397219, at *2 (Iowa Ct. App. June 15, 2005) (same).

Thongvanh's claim is not time-barred. However, the district court was correct in dismissing Thongvanh's claim because *Plain* does not apply retroactively to his case.

**AFFIRMED.**